In re the MARRIAGE OF Marcia Ruth SCHEPPELE and James E. Scheppele

Upon the Petition of Marcia Ruth Scheppele, Petitioner–Appellant,

And Concerning James E. Scheppele, Respondent–Appellee.

No. 93–0091.

Court of Appeals of Iowa.

Sept. 16, 1994.

Donna Lesyshen of Tyler & Lesyshen, Waterloo, for appellant.

John R. Walker, Jr., and Eric W. Johnson of Beecher, Rathert, Roberts, Field, Fister, Walker & Morris, P.C., Waterloo, for appellee.

Considered by DONIELSON, C.J., and HABHAB and HUITINK, JJ.

HABHAB, Judge.

Former wife, Marcia Scheppele, appeals from the property division provisions of the parties' dissolution decree. Specifically, Marcia claims the district court erred in its

valuation of her IPERS pension and the parties' jewelry. We affirm as modified.

Marcia and James Scheppele were married on January 31, 1969. They have two seventeen-year-old girls.[1] In 1992, Marcia filed a petition for dissolution of marriage.

At the trial, one of the primary disputes centered upon the valuation of Marcia's pension fund. She was, at the time of trial, employed by the Waterloo School District and has been employed there since 1972. Marcia is currently fully vested in the IPERS pension plan through her employment with the Waterloo school system. Her expert valued the pension fund at $26,017. James' expert valued the fund at $66,344.

On September 25, 1992, the district court entered its decree dissolving the parties' marriage. For purposes of the property distribution, the court valued Marcia's pension fund at $66,000.

Marcia filed a motion to reconsider and a motion for new trial. As part of her motion to reconsider Marcia claimed the court erred in undervaluing jewelry awarded to James. As part of her motion for new trial, she claimed the court erred in its valuation of her pension fund. She attached an exhibit to her motion from an accounting firm certified in public accounting. The accounting firm valued the pension fund at between $32,556 and $41,544. The district court refused to amend its valuation of the pension plan. Marcia appeals.

■ In this equity action, our review is de novo. Iowa R.App.P. 4. We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Steenhoek,* 305 N.W.2d 448, 452 (Iowa 1981). We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7).

■ On appeal, Marcia claims the district court erred in valuing her IPERS at $66,000. She claims the correct value is $24,766.

■ Pension benefits are treated as marital property subject to equitable division. *In re Marriage of Mott,* 444 N.W.2d 507, 510–11 (Iowa App.1989). They are considered in formulating an equitable distribution of property. *In re Marriage of Miller,* 475 N.W.2d 675, 677 (Iowa App.1991); *In re Marriage of Curfman,* 446 N.W.2d 88, 89 (Iowa App.1989). On review, we view all economic aspects of a dissolution decree as an integrated whole. *In re Marriage of Imhoff,* 461 N.W.2d 343, 344 (Iowa App.1990) (citing *In re Marriage of . Campbell,* 451 N.W.2d 192, 196 (Iowa App.1989)).

Rather than dividing the pension between the parties, the district court awarded Marcia her IPERS pension and awarded James other property of equal value. This approach has been approved in other cases. *See In re Marriage of Johnston,* 492 N.W.2d 206, 208 (Iowa App.1992); *Miller,* 475 N.W.2d at 677–78; *In re Marriage of Hansen,* 465 N.W.2d 906, 909–10 (Iowa App. 1990); *Imhoff,* 461 N.W.2d at 344–45.

Marcia argues the value placed by the court on her pension is incorrect. Marcia argues the correct amount should be $24,766, although her expert valued it at between $32,556 and $41,544 in his report submitted in support of Marcia's motion for a new trial.

■ We note that if we do not include Marcia's employer's contributions, the present value of Marcia's contributions and accrued interest in her IPERS plan is $26,000. However, the value of Marcia's IPERS pension is not limited to her vested contributions. *See In re Marriage of Johnston,* 492 N.W.2d 206, 208 (Iowa App.1992); Iowa Code § 598.21(1)(i) (1991).

.The method adopted by the district court to value the IPERS pension was based on both the employee's and the employer's contribution to the fund at the time of the dissolution. Although the employer does not

1. Issues concerning child custody and support are not part of this appeal.

contribute to the plan in a way assignable to individual employees, it does contribute to the IPERS general fund at a ratio of 1.55 times that of the employee's contribution. *See* Iowa Code section 97B.11.

Although we have in prior decisions approved the method utilized by the trial court to resolve the division of the pension plan dispute, we decline to do so in this instance for it. is not the best solution. The substantial difference in the valuations fixed by the experts in this field brings us to the conclusion that the decree should be modified by providing for payments out of future benefits when received. Thus, we modify the decree to provide when Marcia receives her pension, if IPERS has ·the authority to divide the pension, James is to receive fifty percent of a fraction of her pension or pension payments as follows: the numerator of the fraction being twenty years, the number of years Marcia contributed to IPERS during the marriage; .and the denominator of the fraction being the total number of years during which benefits were accumulated prior to being paid. *In re Marriage Curfman,* 446 N.W.2d 88 (Iowa App.1989). In the event IPERS does not have the authority to divide the pension, then Marcia is to pay directly to James the fifty percent pension amount as calculated aforesaid. In addition, in the event Marcia elects to withdraw from IPERS and take a cash refund, then James shall be entitled to one-half of that amount.

Marcia next claims the district court erred in undervaluing jewelry awarded to James because of a mathematical error. She requests as to this assignment that she receive an additional $1613 to offset this error.

In the decree, the district court stated it was accepting the values placed on the jewelry in Exhibit 13. Therefore, we agree with Marcia the district court valued the jewelry at less than stated in this exhibit because of a mathematical error. We modify the decree accordingly, but we decline to make a further modification in the property distribution for Marcia's claim about the ring.

Marcia also claims the district court erred in not awarding her trial attorney fees. Iowa trial courts have considerable discretion

in awarding attorney fees. *In re Marriage of Giles,* 338 N.W.2d 544, 546 (Iowa App. 1983). To overturn an award the complaining party must show that the trial court abused its discretion. *Id.* Awards of attorney fees must be for fair and reasonable amounts, *In re Marriage of Willcoxson,* 250 N.W.2d 425, 427 (Iowa 1977), and based on the parties' respective abilities to pay. *In re Marriage of Lattig,* 318 N.W.2d 811, 817 (Iowa App.1982). We affirm the district court on this issue.

Both parties request appellate attorney fees. An award of attorney fees is not a matter of right, but rests within the court's discretion and the parties' financial positions. *In re Marriage of Kern,* 408 N.W.2d 387, 390 (Iowa App.1987). We are to consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal. *In re Marriage of Castle,* 312 N.W.2d 147, 150 (Iowa App.1981). We find each party should pay his or her own attorney fees.

In conclusion and to summarize, we affirm the trial court in all respects except we modify the trial court's decree in the following respects: (1) the IPERS pension plan of Marcia's shall be divided in the manner previously set forth in this opinion; (2) the trial court at paragraph 13 of its opinion determined that Marcia received assets having a value of $85,380. After we deduct the IPERS valuation of $66,000, she receives assets equaling $19,380. James, in turn, after adding the $1613 jewelry valuation correction to the figure of $26,320 set forth in paragraph 13 receives assets equaling $27,933. To achieve equity, Marcia by this modification is entitled to receive an additional $4276; (3) we accept the court's figures as to the family residence and modify paragraph 13 by deleting the last sentence and by providing that James' equity is reduced to $74,974 ($79,250 − $4276); (4) therefore, we modify para-

graph 9 of the decretal portion of the decree by deleting the amount of $47,459 (the amount respondent was to pay petitioner) and insert in lieu thereof the sum of $83,526 ($79,250 + $4276) as the amount respondent is to pay petitioner. Paragraph 9 is further modified by inserting after the words "sales costs" in the last line of that paragraph, the words "payment to Marcia of $4,276."

Costs of this appeal are assessed one-half to appellant and one-half to appellee.

**AFFIRMED AS MODIFIED.**